The next case is People v. Smith. If the court is ready? Sure, absolutely. Your Honor. Good afternoon, counsel. May it please the court. This case involves a traffic stop for no front license plate and suspended vehicle registration. I apologize for my voice. I'm having some sinus and drainage issues. It's going around. Don't worry about it. Yes. In this case, the trial court found the stop was supported by probable cause. But the court found the stop was unduly prolonged when the officer ran the defendant's criminal history and contacted a DEA agent concerning that substantial criminal drug history. In his brief, the defendant argues that the officer unreasonably detained him in violation of the Fifth Amendment. And he also argues that the officer's inquiries altered the fundamental nature of the traffic stop. And it is true that a seizure may become unlawful if it is prolonged beyond the time reasonably required to complete the mission. But the legal landscape has changed concerning what is the mission of a traffic stop. In 2016, the only Supreme Court decided, People v. Cummings, it's also known as Cummings II, and that case is found at 2016 IL-115769. Cummings II centered on answering the question, what are ordinary inquiries of traffic stops? The Supreme Court focused on officer safety, noting that safety precautions entitle an officer to know about the driver with whom he is interacting. The court determined that that entitled officers to check driver's license, proof of insurance, and registration. Cummings II, however, also cited federal decisions, including United States v. Holt, which was the Tenth Circuit, 2001 case, that held that criminal record and warrant checks are permissible even though the purpose of the stop has nothing to do with private criminal history. In other words, criminal records checks are normal inquiries in traffic stops. As part of the mission of the stop, they do not belong to stop in violation of the Fourth Amendment as a matter of law. And this is where the trial court in this case strayed. The stop here was prolonged in order for the officer to perform a criminal record check. Anything found during the criminal record check may or may not add to an officer's reasonable suspicion of additional criminal activity. Okay, I'm going to stop you there. When he runs the warrant and record check, he finds out that there isn't any warrant, and I guess the registration issue got resolved, but he does find out that he has an extensive criminal history. Then he orders the canine unit to come on board, and then it appears that he did kind of ask him to step outside and talk further about his job in Rolla. At what point, how do you explain that as being within the normal course of checking warrants and criminal history when he has that knowledge and he says, he even tells the man, I think, that I'm not going to give you a ticket. Well, I think your answer to that question, when you look at the trial court's order, and it's found at the appendix of the state's opening brief, the court laid out everything that happened from 27 seconds into traffic stop all the way up to 12 minutes and 31 seconds. That was the amount of time it took for the criminal record check to be completed. Those initial reports that were made about where is it you're headed and those type of questions, the court did not find any of that extended anything in that it's permissible to ask questions like that. Right, but once he gets him out of the car and continues questioning him. After the 12 minutes and 31 seconds? Yes, that's what I want to focus on. I believe what occurred in this case, Your Honor, is that mounting additional suspicion occurred that justified the officer extending this into an investigative detention. What was that? What was that? I read in the brief he looked nervous. He was wearing a construction vest. Those were the things the court cited. Well, tell me what's in the record. What I'm trying to say is the court cited that the officer testified to. Yes, the officer testified to that, but the court also left out some very significant other things that occurred. Okay. We already know according to Counties 2, whatever happens in the criminal records check does not go on the traffic stop. So anything within the 12 minutes and 31 seconds into the stop, we're not in violation of Fourth Amendment there. Right. So what occurred within that 12 minutes and 31 seconds? Did anything occur there that heightened this into what should justify into an investigative detention? During that 12 minutes and 31 seconds, the officer saw a blunt cutter on the defendant's key ring. Okay, but let me ask you, at what point does he then say, well, I'm not going to issue you a ticket? I don't believe that occurs until he is, I think the testimony was that his intent was to issue the warning ticket. But I think as things come at an officer, even though he may have an intent initially to do something, things might arise during that stop where they determine they're not going to issue the ticket. But I thought that he made that statement after the 12 minutes that he wasn't going to issue the ticket. I'm sure it was after that 12 minutes and 31 seconds. And that's when he saw what? Okay, during that 12 minutes and 31 seconds, again, he saw the blunt cutter, which he testified the only use for a blunt cutter he was aware of was to hollow out a cigar and insert marijuana into it. What's a blunt cutter? What are you talking about? Well, the way he described it is it's some sort of a cylindrical item. You put a cigar in it. It's got a razor blade in it, and it hollows out a cigar so that marijuana can be added into it. So it's a tobacco and a marijuana. I thought it was the thing that cut off the end of the cigar. You put the cigar in it, and it chops off the end? There is an instrument called that, but it's not a blunt cutter. People in the drug trade understand what a blunt cutter is, and there's no additional information or contradictory information that's used for drugs. Also, during the 12 minutes and 31 seconds, the criminal record check revealed the defendant had a conviction for manufacturing and delivery of heroin that was 15 and 100 grams in Chicago, resulting in a five-year sentence. The officer learned the defendant had a charge out of Missouri for manufacturing and delivery of a controlled substance and possession of cannabis. So if he learns that he has a criminal history, that's enough to entitle him to prolong? I believe it may, Your Honor. If he finds other indicators of criminal activity that kind of confirm his suspicions, I believe it can rise to the level of reasonable suspicion. I believe it did here. So if I'm looking at your position, he has a prior cannabis conviction, so now he sees an instrument that's used to hide cannabis, and he links that in his mind. That's correct. The other things, though, a pause in his speech, a tone in answering his questions, a road construction vest, and an unusual statement regarding his work schedule. How does that relate to any of his prior criminal activity? Well, I think they just add to, is his story matching up? Because one of the other things that occurred was, as the officer was checking the criminal history in the 12 minutes and 31 seconds, he also found out that the defendant was the subject of a pending criminal drug investigation out of Rolla, Missouri. Which is where he's headed. Where his defendant headed, to Rolla, Missouri. Why would he head to some place that he has a pending criminal investigation? Because he's going to work for his uncle or something. Well, I think that the reasonable assumption is that he's going there to engage in another drug pickup or drug trade. In any event, I seem running out of time at this point, but I think that what occurred is, in addition to the pauses in the speech, in addition to a construction vest that the officer thinks is probably a prop, and in addition to this extensive criminal drug history, we've also got the, that he's headed to Rolla, where there's a pending drug investigation. That this justified expanding this into an investigative detention, so the officer could either confirm or dispel his suspicions regarding that drug activity. I think the court failed to address any of those issues, and only looked at... Go ahead. Finish your sentence. And only looked at, well, I think there might be an innocent explanation for why the guy was wearing that vest. And so, for those reasons, the state would respectfully ask you to reverse and remand. And I'll save additional comments for everybody. Thank you, Your Honor. Thank you, Counsel. Counsel? Judges? Counsel? May we have your support? My name is Rob Bass. I represent Mr. John Smith. And just to respond to two items that counsel has suggested, I'd ask the court to consider. One, the issue of the blunt cutter. The state had indicated that the blunt cutter was observed. If we were to break down, there is a video of the stop. And it's been stipulated by the state, as well as Mr. Smith, that it accurately depicts what transpired at the stop. And there's a couple of exhibits that were also admitted. In review of the common law record, there is an exhibit. It's People's Exhibit 3. There's two photographs that are affixed to it. The top, I had raised an objection to it. It was granted. The bottom is a picture of the front of Mr. Johnny Smith's car. And when I look in the record, it appears that the excluded exhibit was still attached. I would ask the justices to please disregard the top photo from People's Exhibit number 3. What time of day was this? This was, I believe it was midday, anywhere between— It was afternoon. I believe it was sometime in the afternoon. With respect to the statement made by the state regarding the blunt cutter, the blunt cutter, it's interesting because, first, the trial court is in the best position to determine credibility as well as to ascertain based upon demeanor as well as the impressions of the witnesses who testified as well as the evidence that's been elicited. And so Caseloff says that great deference is given to the trial courts. It's in a superior position to weigh and to assess the credibility of the witnesses as well as— The blunt cutter is used. It seems to be unrebutted that the blunt cutter is used in an effort to hide marijuana. He had a prior marijuana conviction. He had a pending criminal drug investigation in Rolla, which is where he said he was headed. Can you rebut her argument that that might give rise to a reason for further investigative stop? Certainly, Justice Cates. First is the blunt cutter. And I had asked this officer the very same question. During the grand jury testimony, the officer, he made no mentioning that he observed a blunt cutter, and therefore he believes it's an indicator of possible drug use or illegal criminal activity. In his police report, on the record, the common law record, he also stated it wasn't listed in his report. And so I asked him if he had met with the state's attorney before the hearing, and he said yes. I said it's only after meeting with the state for the first time at the time of the hearing does he state in open court that he determined that it was an indicator. So there was no mention of this blunt cutter at all prior to that? Yes, Justice. In the grand jury transcript, which is contained in the common law record, as well as in the officer's own report, for which he had testified to, he makes no mention of the blunt cutter. Second, with respect to an ongoing or pending investigation, the video itself also, while after the first encounter where there's the initial encounter with Mr. Smith, Mr. Smith takes the license, the insurance goes, the vehicle registration goes back to the squad car, we can hear on the evidence. And he places a call into a gentleman by the name of Chris, who is then notified to bring a K-9 unit. And it's relayed that Mr. Smith was involved in a prior investigation, not a pending investigation. So just so that the record is clear, it was a prior and not a pending investigation. So is it your position that the focus changed to a criminal investigation at the time that he orders the K-9? That's precisely it. The first point is the unreasonable belief that there was any criminal activity afoot. The business purpose, if you will, the traffic stops, that was concluded within the first couple of minutes. But at that time, he noted a few things. That's working in another state, traveling a long distance. The allegation that there was an uh, meaning, well, that was just too slow to respond. A pause, meaning you're delaying for it, you're stalling. That's what the record reflects on and carried. And then the tone of his voice when he simply mentions his uncle's construction company, Jones Construction. That was opined by the officer as being fabrication, as a fabricated statement. He was asked on redirect whether any follow-up information. Not that, according to the totality of circumstances, under a reasonable, objective officer, he's under no duty to confirm that. But I did, nevertheless, ask him about that. And he did no such backup to verify his own personal, subjective, sincerely held belief. So are we to consider the fact that this officer is highly trained in the detection of criminal drug activity and how people that are engaged in that type of behavior act? And what did he call it, staging and props? And is that something that's fair to consider? Justice, absolutely. And I would state that. Well, how does that then come out? I mean, does that give him more ability to discern whether or not criminal activity is afoot? The trial court, I believe, has articulated that. That is one of many factors under the totality of circumstances approach. Of course, an individual is trained in drug interdiction. Of course, there is some weight to be attributed, to be assigned to that by the individual who is in charge of assigning credibility. Also, such as what the officer sees, what he attributes as being suspicious versus odd, or, well, there is potentially a criminally-based reason for this observation versus a non-criminal reason, such as nervousness. It's not uncommon. And the record reflects that hearing that the officer had indicated he's conducted over 1,000 traffic stops, over 500 arrests. Wasn't there a 60 Minutes video done about—I may be speaking out of turn here, but I know there was a kind of an expose of Collinsville-based officers, DEA agents, in drug stops along 5570 out of the Collinsville unit in the use of drug dogs. I have reviewed that. That was, gosh, I would say within the last seven or eight years. It's been quite some time, but I believe, and I don't want to misstate, but my understanding of that expose of that article, and I saw it on YouTube, was basically just a feigned reason in order to bring a canine officer. In this case, a canine officer was not brought out on the scene. What happened was there was a regurgitation of the same questions. Within the first couple of minutes, the purpose, the business purpose had already been started. It wasn't until the officer went back and checked in the squad car and the existence of Mr. Smith's prior criminal history did he then, at that time, he made two decisions. And the record shows he made two decisions. One, he was going to issue him a warrant, but two, and the video shows that he had it on clipboard, but he never, factually speaking, never intended to ever give him that warrant. So when Stacy says that he could consider his criminal history, your belief is that's not enough to go any further? It falls short, and it falls woefully short. I believe, in review of the totality of circumstances, I believe that what is presented before a reasonably objective officer under like or similar circumstances, and I believe Justice Case had indicated what, if any, connection is there from the prior criminal history, the existence of it, and of a prior investigation, and what this officer sees afoot there on that particular day. It just doesn't make sense, and that's one of the reasons that the court had properly assigned very little weight to two things. Well, one, that it was not reasonable in his belief to prolong the stop at two, that he placed little weight as to the vest as well as the work schedule. I had asked, the officer was asked on the stand whether he himself has any personal knowledge of road construction industry, and candidly, he said he was not. And so to make the determination that an unusual work schedule, Thursday to Tuesday, rose to the level of possible indicator for criminal activity, the court determined, was not going to. Going to. Thank you, Your Honor. Ms. Stacy, I need to ask you a question. Let's suppose that it's still okay. He's still okay as far as looking at the criminal history. He didn't see the blunt cutter in his police report or the grand jury testimony. Well, Your Honor. Seems to be a credibility determination by the court. I believe Cass's representation to this court is incorrect. First of all, the state never relied on any exhibit. The information on the blunt cutter, even though he said he didn't bring it out during his exam, certainly brought out on cross-examination. At page 18 of the state's opening brief, Officer McElroy testified about the blunt cutter contained on the defendant's key ring. It's found at R56 of the record. That was during the motion to suppress. Yes. Yeah. I'm talking about a police report didn't have it on it, right? Things that wind up in a police report or don't, that's really not indicative of whether. The issue here is, is there enough on a motion to suppress to show a Fourth Amendment violation? I know, but then you have a credibility issue that's kind of intertwined there. But let me ask my question, if you would, please. So, let's suppose that he sees the blunt cutter. Now he goes back and he sees that the guy has a prior criminal history. He doesn't go back to the car to talk to this guy to learn more. He immediately calls a dog. So now, let's suppose that's okay, too. Here's what I want to ask you. He asks the defendant, can I search you ostensibly to protect himself? And the guy says, yeah. Are you talking about the pat down? Yeah. And he finds nothing. Correct. So now, why? Well, that's also safety. I understand. I'm there. Yes. Okay. Hypothetically, I'm there. Why is he prolonging him now? I believe at that point, he had already made up in his mind, he's got reasonable suspicion. But how? He's found nothing. I believe he has, Your Honor. What? The blunt cutter, that information is clearly in the record. It is in the state's opening brief. I know. I've got that. We're past that. We've got the blunt cutter. He's worried about himself. But it formed part of the basis of a reasonable suspicion, and that's what this case is about. Yeah, but can't you eliminate or rule out? Let me ask. Let me ask. Wait, wait, wait. Can't you rule? Isn't it reasonable to say, okay, you're worried about the vest, his work schedule, officer safety. Didn't he rule out all of those issues that he was worried about when he pats him down, finds nothing?  I do not believe that's correct, Your Honor. The guy's cooperating. I do not believe that's correct. And I think Cummings, too, says that all of that, everything that happened up to 12 minutes and 31 seconds is permissible. It's not violent of the Fourth Amendment. And it all leads to the reasonable suspicion to turn this into investigative detention. When does the detention become unreasonable? When does it become a seizure? The detention never became unreasonable. Because I think the additional reasonable suspicion meant that officers should hold him. What was the additional? That's what I'm trying to find out. What was the additional reasonable suspicion? The additional reasonable suspicion and contrary to counsel's statement that this was not pending drug investigation, that is not correct. Page 8 of the people's reply brief into page 9 discuss that. In addition, the court's order discusses it at 9 minutes and 15 seconds. Okay, but he knew that. I'm at the search of the vest. You keep going before the search of the vest. Because the issue is reasonable suspicion. Counsel, let the court answer the question. I'm going to pat that. Okay? I'm going to pat that. What else was there that allowed for continuing criminal investigation? There was a considerable and substantial drug history. There was a pending drug investigation in Rolla. Defendant was headed to Rolla at the time. He was wearing a construction vest at a time when he was not working. He did not know anything about the construction industry. Tell him to go across the river in Missouri at about 10 o'clock at night when they're working on construction. Yes. At night. In the direction that you're driving. Yeah. The big lights are on. Everything's going on. I'm also not for the court. The trial court never made a finding that this blunt cutter, that that was not a credible, any credible information. There was substantial testimony about it. And I believe affirming this case would not only go against. Thank you, counsel. Sorry. Thank you. We appreciate the brief arguments of counsel to take this case under advisement.